(February 6, 2007)

■ AFA PROTECTIVE SYSTEMS, INC., et al., Appellants-Respondents, v CITY OF NEW YORK, Respondent-Appellant. [829 NYS2d 641]—

In an action, inter alia, for a judgment declaring that the plaintiffs have no obligation to pay the defendant any fee under Administrative Code of the City of New York § 15-127 from January 1, 1994 forward, the plaintiffs appeal from an order of the Supreme Court, Kings County (Partnow, J.), dated November 3, 2005, as amended December 6, 2005, which denied their motion, in effect, for summary judgment declaring that they have no obligation to pay the defendant any fee under Administrative Code of the City of New York § 15-127 from January 1, 1994 forward, and granted those branches of the defendant's cross motion which were for summary judgment on its counterclaim on the issue of liability, and, in effect, for summary judgment declaring that the plaintiffs have an obligation to pay the defendant a fee under Administrative Code of the City of New York § 15-127 from January 1, 1994 forward, and the defendant cross-appeals from the same order, as amended.

Ordered that the cross appeal is dismissed, as the defendant is not aggrieved by the order, as amended (*see* CPLR 5511); and it is further,

Ordered that the order, as amended, is reversed, on the law, with costs, the plaintiffs' motion, in effect, for summary judgment declaring that they have no obligation to pay the defendant any fee under Administrative Code of the City of New York § 15-127 from January 1, 1994 forward, is granted, those branches of the defendant's cross motion which were for summary judgment on its counterclaim as to liability and, in effect, for summary judgment declaring that the plaintiffs have an obligation to pay the defendant a fee under Administrative Code of the City of New York § 15-127 from January 1, 1994 forward, are denied, and the matter is remitted to the Supreme Court, Kings County, for the entry of a judgment declaring that the plaintiffs have no obligation to pay the defendant any fee under Administrative Code of the City of New York § 15-127 from January 1, 1994 forward.

A private fire alarm company (hereinafter PFA) is a nongovernmental entity that provides fire protection services for many businesses located within the City of New York. For more than 125 years, PFAs have provided such services. In this regard, a PFA installs devices known as "terminals" on its subscribers' premises, which transmit a signal to the PFA's "central office" when they sense a smoke or fire condition. A dispatcher at the PFA's central station may then forward that signal to one of the "Communications Offices" operated by the New York City Fire Department (hereinafter FDNY) (*see* Rules of City of NY Fire Dept [3 RCNY] § 17-01 [d] [3] [ii]). A dispatcher at an FDNY Communications Office then interprets the signal to discern the terminal's "terminal assignment number." Since the FDNY has a "tailored" response for each terminal assignment number, the FDNY Communications Office dispatcher immediately knows exactly where the "fire emergency" is, and the best way the FDNY should respond to it. The FDNY Communications Office dispatcher then passes that information along to the appropriate firehouse.

A PFA may choose to connect its equipment and facilities to the City's "fire alarm communications system," which also connects public "call boxes" to the Communications Offices, by means of telephone wires. Thus, when a PFA connected to the fire alarm communications system forwards a signal to an FDNY Communications Office, it does so through a direct, dedicated connection to the system.

In 1910 the Legislature enacted a law, presently codified at section 15-127 of the Administrative Code of the City of New York, which authorizes the City's Board of Estimate (hereinafter the Board) to charge PFAs for their use of the fire alarm communications system (*see* L 1910, ch 544, § 1). In this regard, the law, which has remained unchanged, authorizes the Board to charge PFAs "which are connected with the . . . system," or which "are permitted to make any use whatsoever of the service of such . . . system" (L 1910, ch 544, § 1; Administrative Code of City of New York § 15-127 [a] [1]).

From 1923 through 1989 the Board passed a series of resolutions, which set the fees that a PFA would have to pay for its use of the fire alarm communications system. Each of the resolutions indicated that a PFA had to pay the fees if it were "connected with" the system. On September 1, 1990 the Board was abolished. Subsequently, the FDNY determined that it was the appropriate agency to set the fees that the Board had been setting (*see* NY City Charter § 1152 [e]).

As of November 1993 the plaintiffs, which are PFAs, stopped

using their central stations' direct, dedicated telephone connections to report fire emergencies to the FDNY's Communications Offices. Instead, when the plaintiffs' central stations received a signal from an activated terminal, the dispatchers there called the FDNY Communications Offices' dispatchers on a public telephone line, in the same manner as a member of the general public would report a fire emergency. In addition, the plaintiff's central station dispatchers stopped providing the FDNY Communications Offices' dispatchers with most of the plaintiffs' subscribers' terminal assignment numbers, and the plaintiffs cancelled thousands of other such numbers.

On June 19, 1994 an FDNY rule establishing a compensation schedule fixing fees for PFAs became effective (*see* Rules of City of NY Fire Dept [3 RCNY] § 17-04). The rule, which the FDNY promulgated "pursuant to the authority vested in" it by Administrative Code of the City of New York § 15-127 (a) (1), provided, in essence, that each PFA would pay a fee based on the number of terminals that the particular PFA monitored (*see* Rules of City of NY Fire Dept [3 RCNY] § 17-04 [c]).

In December 1994 the plaintiffs, which continued to be charged connection fees, commenced the instant action against the City, seeking a judgment declaring that they had no obligation to pay any fee under Administrative Code of the City of New York § 15-127 (a) (1) from January 1, 1994 forward.

The record establishes that the plaintiffs abandoned their direct, dedicated telephone connections to the FDNY's Communications Offices by January 1, 1994, and have not been "connected with" the City's fire alarm communications system since that date (Administrative Code of City of New York § 15-127 [a] [1]). Similarly, the record reveals that since that date, the plaintiffs have not been "mak[ing] . . . use . . . of the service of [that] system" for the "benefit of their patrons" (Administrative Code of the City of New York § 15-127 [a] [1]). To the extent that the plaintiffs can be viewed as "making use of" of the public telephone system for the "benefit" of some of their subscribers, they are nevertheless making no use of the City's fire alarm communications system—a network of dedicated telephone lines to which the plaintiffs have no connection, and over which they do not forward signals.

Accordingly, since January 1, 1994, the plaintiffs have not been subject to the fees set forth in the final 1989 Board resolution or in the rules of the FDNY (*cf. Matter of Society of N.Y. Hosp. v Axelrod*, 70 NY2d 467, 474 [1987]; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588, 595 [1982]). Under these circumstances, the plaintiffs were entitled to sum-

mary judgment declaring they have no obligation to pay the City any fee under Administrative Code of the City of New York § 15-127 from January 1, 1994 forward.

The parties' remaining contentions either are without merit or have been rendered academic in light of our determination.

Since this is a declaratory judgment action, the matter must be remitted to the Supreme Court, Kings County, for the entry of a judgment declaring that the plaintiffs have no obligation to pay the defendant any fee under Administrative Code of the City of New York § 15-127 from January 1, 1994 forward (*see Lanza v Wagner*, 11 NY2d 317, 334 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]). Miller, J.P., Spolzino, Ritter and Dillon, JJ., concur. [*See* 10 Misc 3d 1052(A), 2005 NY Slip Op 51924(U) (2005).]